IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBI LYNN ZUVER, ) | No. C 05-3062 MJJ (PR) |
| Petitioner, ) | |
| v. ) | **ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |
| DEBORAH JACQUEZ, Warden, ) | |
| Respondent. ) | |

Petitioner, a California prisoner, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254. After reviewing the petition, the Court dismissed petitioner's third, fourth, and second claim in part, for failure to state a cognizable claim for relief. The Court ordered respondent to show cause why the petition should not be granted on the basis of the first claim, part of the second claim, and the fifth claim. Respondent filed an answer accompanied by a memorandum and exhibits contending that the petition should be denied. Petitioner did not file a traverse.

**PROCEDURAL BACKGROUND**

In 2002, petitioner was sentenced to 21 years in state prison based on her no contest plea to voluntary manslaughter and use of a firearm in committing the offense. The California Court of Appeal affirmed the conviction and sentence on direct review. On appeal to the Supreme Court of California, the court denied review. A subsequent habeas petition to the Supreme Court of California also failed.

# FACTUAL BACKGROUND

The following facts are set forth in the California Court of Appeal opinion:

## I. The Offense

In November 2000, Zuver lived in a converted garage apartment at the home of her friend Sherry Novello. Zuver's boyfriend, Kim Garloff, also lived in the apartment periodically. Around 10:00 p.m. on November 23, 2000, Zuver was at home and Novello overheard her talking with Garloff on the telephone. Later that night, when Novello was in bed, she heard two loud "bang[s]" coming from the garage entrance. Zuver then came to Novello's room and told her to "get up" because she had either shot or killed Garloff. Novello went to the garage and saw Garloff slumped over, with his head hanging off the side of a futon, making gurgling or gasping noises. Zuver was standing next to him with a gun in her hand. She told Novello she shot Garloff "because he had taken everything from her." As Novello watched, Zuver bent over, put the gun barrel to Garloff's forehead, and told him to "shut up and die." Novello suggested they get him help, Zuver refused, saying "he could just die." Zuver then threatened to kill herself. She put the gun barrel in her mouth and held it there for several seconds before giving it to Novello. As Novello left the house to call for help, Zuver imitated the gurgling sounds Garloff made and continued yelling at him, calling him a "fat toothless bastard."

Three days before the shooting, Zuver had purchased two boxes of .38 caliber bullets from a sporting goods store. She said the ammunition "was for her husband or boyfriend."

Garloff died from two gunshot wounds to the head. Both shots were fired at close range–the gun was held approximately six inches away for one shot and directly against Garloff's skin for the other. Each wound standing alone would have been fatal. The forensic pathologist who performed the autopsy testified that immediate medical attention would have made a difference in Garloff's short term survival, but the wounds would have ultimately resulted in death. Garloff had high levels of methamphetamine in his blood when he died, and autopsy findings suggested he was a chronic user of methamphetamine or cocaine and alcohol.

The Sonoma County District Attorney initially charged Zuver with murder but later amended the information to add a charge of voluntary manslaughter. The information also alleged the offense was committed with a firearm, pursuant to Penal Code sections 12022.5, subdivision (a)(1) and 12022.53, subdivisions (b) through (d). Pursuant to a plea agreement with the district attorney's office, Zuver pleaded no contest to voluntary manslaughter and admitted the allegations of firearm use, and the prosecutor agreed to dismiss the murder charge.

## II. Sentencing

The court held sentencing hearings over three days in December 2001. In addition to the probation officer's presentence report, the court received written statements and testimony from Garloff's mother, ex-wife and two daughters. The defense submitted letters to the court from Zuver and her psychologist, a written "biography" describing her life, memoranda recounting a defense investigator's interviews of witnesses who described incidents of Garloff abusing Zuver, proof of Zuver's participation in drug treatment and counseling programs, police reports pertaining to Garloff, and testimony from one of Garloff's former girlfriends, a therapist who examined Zuver, and friends and acquaintances of Zuver.

The prosecution sought an aggravated sentence. Based on evidence that, three days before the shooting, Zuver stole Garloff's handgun and purchased ammunition

>for it, and, on the day of the shooting, Zuver told Novello she wanted to kill Garloff, then later summoned Garloff to her house and did kill him, the prosecution argued the crime was carried out with planning and sophistication.  In addition, the prosecution maintained the crime was committed in an especially cruel, callous manner because evidence showed Zuver shot Garloff while he was in a vulnerable position (reclining on a futon), cursed him while he died, mocked his gasping last breaths, and prevented Novello from calling for medical assistance.  For the same reasons, the probation department also recommended an aggravated term.  Garloff's family said they never witnesses any sign that Garloff had abused Zuver during their relationship.
>. . .
>The court found several aggravating factors to be true and, except for acknowledging Zuver had an insignificant prior criminal record, rejected all mitigating factors proposed by the defense, including allegations that Zuver suffered from battered women's syndrome, acted out of a desire to protect her life or out of extreme provocation, and acknowledged wrong doing immediately after the shooting occurred.  Accordingly, the court sentenced Zuver to an aggravated term of 11 years on the manslaughter charge and an aggravated term of 10 years for the gun use enhancement.

People v. Zuver, No. A098011, slip. op. at 1-5 (Cal. Ct. App. April 30, 2003) (hereinafter "Slip Op.").

**DISCUSSION**

A.   Standard of Review

This Court may entertain a petition for a writ of habeas corpus submitted by an individual in custody pursuant to a state court judgment only if the custody violates the United States Constitution, laws or treaties.  28 U.S.C. § 2254(a) (2005) (hereinafter "AEDPA"); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d) (2005); Williams v. Taylor, 529 U.S. 362, 402-403 (2000).

A state court decision qualifies as "contrary to" federal law if it directly contravenes a Supreme Court decision on a question of law, or reaches a conclusion converse to a Supreme Court decision with materially indistinguishable facts.  Williams, 529 U.S. at 413.  A state court decision involves an "unreasonable application" of federal law if it "identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-413.  In determining whether a state court's decision contravenes or unreasonably applies clearly established federal law, a federal court examines the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision.  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  In this case, the highest state court to issue a reasoned opinion was the California Court of Appeal confirming the trial court decision.

B.  Legal Claims

    **1.  Ineffective Assistance of Counsel**

Petitioner claims that her trial counsel rendered ineffective assistance in sentencing proceedings because: 1) counsel advised her to decline an interview with the probation officer prior to the presentence report, 2) counsel failed to object to errors and omissions in the probation department's report and the prosecutor's statement in aggravation, and 3) counsel failed to object to the trial court's evaluation of the battered wife syndrome evidence.[1]  A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Id.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, she must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Strickland, 466 U.S. at 687-88.  Second, she must establish that she was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

---

[1] The Court consolidates petitioner's claim 1 and the remaining part of claim 2 for the purposes of this discussion.

4

at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  Furthermore, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies.  See Strickland, 466 U.S. at 697; Williams v. Calderon, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice), cert. denied, 516 U.S. 1124 (1996).

        The California Court of Appeal concluded the performance of trial counsel was not deficient.[2]  As to defense counsel's advice to petitioner to decline the interview by the probation officer, the Court of Appeal cited to several possible reasons he plausibly may have done so: concern his client might behave unfavorably towards the officer during the interview, fear that the interview setting could feel adversarial, or simply that he believed the information could be better conveyed through submitting a written statement.  (Slip Op. at 5-7.)  The Court of Appeal also rejected petitioner's claim counsel failed to object to errors and omissions in the presentence report and the prosecutor's statement in aggravation.  The Court of Appeal noted defense counsel's statement in mitigation contained numerous references to "misrepresentations" in those documents, at one point stating that certain misrepresentations in the presentence report were "blatantly misleading."  (Slip Op. at 7.)  The appellate court concluded that "Zuver's specific criticisms of the presentence report as biased (e.g., for failing to describe the drug and criminal history of the victim and failing to incorporate information from Zuver's 'biography' and written statement) simply do not support a claim for ineffective assistance of counsel where counsel provided the court with ample defense-orientated information to counter the report."  (Slip Op. at 7-8.)

        The Court of Appeal reasonably found defense counsel may have considered many possible tactical decisions in advising petitioner to decline interviewing with the probation officer prior to the presentence report.  As the appellate court noted, defense counsel

---

[2]The Court of Appeal cited to the correct Supreme Court rule, from Strickland, in its decision.  (Slip Op. at 6.)

1 submitted numerous documents for the trial court to consider in mitigation. Those
2 documents included letters to the court from petitioner explaining her relationship with the
3 victim and the victim's involvement with drugs and drug activities; a description of the
4 events that occurred on the night of the murder; a written "biography" chronicling petitioner's
5 history of drug and alcohol abuse and childhood physical and sexual abuse; proof of
6 petitioner's participation in drug treatment and counseling programs; and police reports
7 pertaining to the victim. The submission of defense counsel's documents indicate he
8 provided the court with considerable information regarding the petitioner to counter the
9 presentence report, a reasonable alternative to having petitioner interview with the probation
10 officer in person.

11 While defense counsel did not formally object to the presentence report's failure to
12 include information on the victim and the terms of the plea sentence, this information had
13 already been submitted to the trial court through the supporting documentation detailed
14 above. As a result, it would not have been necessary for defense counsel to object to such
15 omissions, and his failure to do so did not prejudice petitioner in any way.

16 In rejecting petitioner's argument that the trial court failed to take into account
17 evidence of battered women's syndrome, the state appellate court stated that:

> [J]ust as the plea agreement did not restrict the court's discretion to consider facts supporting an aggravated sentence, so it did not bind the court to apply any or all mitigating factors consistent with the defense's portrayal of the crime. The court's comments indicate it did not "ignore" testimony about battered women's syndrome; rather, the court, as a trier of fact, found Dr. Sonkin's testimony "equivocal at best" as to whether Zuver actually suffered from the syndrome. Finding the evidence of battered women's syndrome unpersuasive, the court concluded this defense did not provide an appropriate basis for mitigation of Zuver's sentence. The court did not abuse its ample discretion in reaching this decision.

23 (Slip Op at 12) (footnote omitted).

24 While the appellate court did not address petitioner's claim that counsel failed to
25 object to the trial court's evaluation of battered women's syndrome, there is no requirement
26 that a trial court is bound to credit evidence of battered wife syndrome. Here, the trial court
27 considered the evidence submitted, including testimony on the issue of battered women's
28 syndrome, and found such evidence to be unpersuasive. Petitioner offers no basis for any

6

objection by counsel, other than simply disagreement with the trial court's conclusion. In the absence of any suggestion as to what specific objection counsel could have made, counsel's failure to object cannot be considered unreasonable or prejudicial. Petitioner's claim that counsel's failure to object to the trial court's evaluation of the battered women's syndrome is unavailing, and therefore petitioner cannot obtain habeas relief on this claim.

In sum, the record does not support finding defense counsel's representation of petitioner in connection with sentencing to be deficient or prejudicial. Consequently, the state court's rejection of petitioner's claims was neither contrary to nor an unreasonable application of federal law, and petitioner is not entitled to habeas relief on these grounds.

**2. Right to Trial by Jury**

Petitioner claims her sentence violates the Sixth Amendment's right to a jury under Apprendi v. New Jersey, 530 U.S. 460 (2000) ("Apprendi") and Blakely v. Washington, 542 U.S. 298 (2004) ("Blakely") because the trial court imposed the upper term as to the voluntary manslaughter conviction and the gun enhancement. Pursuant to a plea bargain, petitioner entered a no contest plea to the charge of voluntary manslaughter under California Penal Code section 192(a) and admitted the use of a firearm in violation of California Penal Code section 12022.5(a)(1). Petitioner faced a sentence with a range between 6 to 21 years. The voluntary manslaughter charge carried with it a term of 3, 6, or 11 years, and the enhanced gun charge carried with it an additional term of either 3, 4, or 10 years imprisonment. The trial court sentenced petitioner to the upper term of 11 years for voluntary manslaughter, and the upper term of 10 years for the gun enhancement, for a combined sentence of 21 years.

In California, most crimes fall under California's determinate sentencing law (DSL), which specifies three possible terms of imprisonment. Under California Penal Code section 1170(b), a trial court will impose a middle term unless aggravating factors warrant imposition of the upper term. In this case, the trial court found several factors in aggravation weighing in favor of an upper term sentence. As described by the Court of Appeal:

> The trial court indicated it had spent "considerable time" reviewing the probation report and all the evidence submitted by the defense and prosecution, including

statements from the victim's family and testimony from witnesses. The court found the following aggravating factors had been proven: (1) The crime was committed with a high degree of cruelty, viciousness or callousness, because Zuver "not only shot the victim twice from behind, but then refused to [call] for medical help and mocked him as he died"; (2) "the victim was particularly vulnerable in that he was seated at the time he was shot and facing away" from Zuver;[3] (3) the crime was committed with prior planning, based on testimony that Zuver bought ammunition three days before the shooting and said "these are for my boyfriend";[4] and (4) Zuver had engaged in violent conduct indicating a serious danger to society. The court found that Zuver's prior convictions were not numerous and rejected this proposed aggravating factor. Except for agreeing Zuver had an insignificant prior record, the court rejected every mitigating factor argued by the defense.

(Slip Op. at 10) (footnotes in the original). Petitioner was sentenced to the upper limit of 11 years for voluntary manslaughter. With respect to its decision to impose an aggravated term for the gun use enhancement, the state appellate court found that:

[T]he gun was used not once, but twice and the second shot guaranteed the victim would not survive... Clearly, the [trial] court did not impose an upper term based on the mere fact Zuver had use a gun to commit the crime. The aggravation resulted from the *way* Zuver used the firearm–that is, to impose a second fatal wound, thereby ensuring her victim would die.

(Slip Op at 13) (emphasis in the original).

In Apprendi, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 488-90. Under Blakely, expanding Apprendi, the "statutory maximum" for sentencing purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather the maximum he or she could impose without any additional findings. Blakely, 542 U.S. at 303-04.

The Supreme Court recently reviewed California's DSL, California Penal Code § 1170(b), which directs a trial court to impose a middle term unless mitigating or aggravating

---

[3] The [trial] court observed this factor was not "especially... persuasive" in this case because it normally concerns the victim's size and status in life; nevertheless, the court believed sufficient vulnerability had been shown to justify use of the factor in sentencing.

[4] While the [trial] court was "not enormously persuaded" by the aggravating aspect of these circumstances, it found they provided some weight in favor of an aggravated sentence.

factors warrant imposition of the upper or lower term.  Cunningham v. California, 127 S.Ct. 856 (2007).  Because aggravating circumstances depend on facts found discretely and solely by a judge, and not a jury, under Blakely the imposition of an upper term under California's DSL violates the Sixth Amendment right to a jury.  Id. At 868.

Unlike the instant case, Cunningham was a decision on direct review.  The Supreme Court has not made Blakely retroactive to cases on collateral review of convictions that became final before Blakely was decided.  Schardt v. Payne, 414 F.3d 1025, 1036 (9th Cir. 2004).  In Schardt, the petitioner's conviction became final on December 22, 2000, after Apprendi was decided on June 26, 2000, but before Blakely was announced on June 24, 2004.  The Ninth Circuit found that although petitioner's sentence violated the Sixth Amendment's right to a jury under Blakely, habeas relief was not available because the Blakley decision announced a "new rule" that does not apply retroactively to cases on collateral review.  See id. at 1034 (citing Teague v. Lane, 489 U.S. 288 (1989)).  Similarly, petitioner's conviction here became final on June 11, 2003, before Blakely was decided.  Thus, as in Schardt, petitioner is not entitled to relief on her Sixth Amendment claim because the rule in Blakely does not apply retroactively to this case.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file and terminate all pending motions.

IT IS SO ORDERED.


DATED:  6/26/2007

_____
MARTIN J. JENKINS
United States District Judge